## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MONIQUE PONCHO-ALDERETE,

       Plaintiff,

     v.                                 Civ. No. 22-153 KK/JMR

UNITED STATES GOVERNMENT,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Judgment on Plaintiff's Amended Complaint and Memorandum in Support (Doc. 63) ("Motion"), filed June 23, 2023. The Court, having considered the parties' submissions, the record, and the relevant law, FINDS that Defendant's Motion is well-taken and should be GRANTED.

### I. PROCEDURAL AND FACTUAL BACKGROUND

#### A. Plaintiff's Claims

Plaintiff Monique Poncho-Alderete, who is proceeding *pro se*, filed her original complaint against the Social Security Administration ("SSA") on February 28, 2022, alleging that SSA employees acted unlawfully toward her when she worked for the agency and when she and her family applied for Social Security benefits. (Doc. 1.) On March 21, 2022, the Court issued a Memorandum Opinion and Order for Amended Complaint, citing defects in the original complaint and ordering Plaintiff to file an amended complaint within 21 days. (Doc. 11.)

On April 12, 2022, Plaintiff filed a first amended complaint (Doc. 12) ("FAC"), which is now the operative complaint in this case. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (holding that an amended complaint supersedes the original); *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990) (same). The FAC consists of a nine-page form "Civil Rights

Complaint Pursuant to 42 U.S.C. § 1983" and 72 pages of attachments. (Doc. 12.) Plaintiff declared under penalty of perjury that the information included in the nine-page FAC is true and correct. (*Id.* at 9.) However, the allegations in the attachments to the FAC are unverified. (*Id.* at 11-81.)

At 81 pages including attachments, the FAC cannot be characterized as short. Moreover, it is sometimes duplicative and often opaque, particularly as to the nature of the legal claims asserted. It therefore fails to comply with Federal Rule of Civil Procedure 8, which requires a "short and plain" statement of the Court's jurisdiction and Plaintiff's claims. Fed. R. Civ. P. 8(a), (b). Nevertheless, in analyzing Defendant's Motion, the Court has thoroughly reviewed the FAC and the documents attached to it, and has done its best to identify Plaintiff's nonconclusory factual allegations and legal claims without acting as Plaintiff's advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) (holding that court must construe *pro se* party's filings liberally but does not act as party's advocate); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (noting that court makes allowances for *pro se* parties' "failure to cite proper legal authority," "confusion of various legal theories," "poor syntax and sentence construction," and "unfamiliarity with pleading requirements," but "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").

The FAC names only one Defendant, *i.e.*, the "United States Government." (Doc. 12 at 1.) In the FAC, Plaintiff alleges that Defendant's employees at the SSA unlawfully:  (a) referred her and her partner for a fraud investigation; (b) conducted an investigation into whether she and her partner had filed fraudulent applications for disability benefits; (c) failed and refused to transfer her, her partner's, and her minor child's applications to another jurisdiction, thereby

allowing her former coworkers to access the family's private information; (d) mishandled the family's applications, delaying the award of benefits to Plaintiff and her child and causing her partner's application to be denied; and, (e) harassed and discriminated against her on the bases of race and disability while she was employed at the SSA. (*Id.* at 2-6.) Based on these allegations, the FAC appears to assert claims for constitutional violations under 42 U.S.C. § 1983[1] and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[2] employment discrimination claims,[3] appeals of SSA final decisions,[4] and claims under the Federal Tort Claims Act ("FTCA").[5] (*See* Doc. 12 at 1-6, 13-18.)

### B. Defendant's Motion and Plaintiff's Response

On June 23, 2023, Defendant filed the Motion presently before the Court, seeking judgment in its favor on all of the claims in the FAC under Federal Rules of Civil Procedure 12(b)(1), 12(c), and 56. (Doc. 63 at 1.) Plaintiff filed a response to the Motion ("Response") on July 7, 2023, and Defendant filed a reply in support of it on July 20, 2023. (Docs. 65, 68.)

In her Response, Plaintiff not only attempts to rebut the arguments in Defendant's Motion, but also requests leave to amend the FAC to name the SSA and former Acting Commissioner of Social Security Kilolo Kijakazi[6] as defendants. (Doc. 65 at 5.) However, under

---

[1] The FAC expressly invokes the Court's jurisdiction under 42 U.S.C. § 1983. (Doc. 12 at 1-2.)

[2] The FAC alleges that Plaintiff's "constitutional rights, privileges or immunities have been violated" by federal employees, (Doc. 12 at 3-6); and, *Bivens* provides a vehicle for certain constitutional claims against federal employees. 403 U.S. at 388.

[3] The FAC includes allegations of discrimination in the terms and conditions of Plaintiff's employment. (Doc. 12 at 4-5.)

[4] The FAC includes allegations that SSA employees mishandled Plaintiff's and her family's applications for Social Security disability benefits. (Doc. 12 at 2, 4-6.)

[5] Attached to the FAC is a completed Form SF-95, (Doc. 12 at 13-18); and, a Form SF-95 is used to satisfy the administrative prerequisites for bringing claims under the FTCA. 20 C.F.R. § 429.102(a); 28 C.F.R. § 14.2(a).

[6] Former Acting Commissioner Kijakazi no longer holds the acting commissioner position because Martin O'Malley was sworn in as the Commissioner of Social Security on December 20, 2023. *See* https://www.ssa.gov/agency/commissioner/ (last accessed May 1, 2024).

Local Rule 15.1, "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M LR-Civ. 15.1. In other words, the Local Rule requires a motion for leave to amend, with the proposed amendment attached. *Id.* Plaintiff has not complied with either of these requirements, and thus, her request for leave to amend is not properly before the Court.[7] *See Bradenburg v. Beaman*, 632 F.2d 120, 122 (10th Cir. 1980) ("It is incumbent on litigants, even those proceeding pro se, to follow … simple, nonburdensome local rules[.]").

## II. DISCUSSION

### A.    Legal Standards

#### 1.  Motions under Federal Rule of Civil Procedure 12(b)(1)

"Because federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute, [they] must ensure [they] have jurisdiction before delving into the parties' arguments." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1170 (10th Cir. 2023) (quotation marks and brackets omitted). "When a court's subject-matter jurisdiction over a dispute is raised—either sua sponte by the court or by a party—the plaintiff, the party invoking federal jurisdiction, must show that jurisdiction exists." *Kansas by & through Kansas Dep't for Child. & Fams. v. SourceAmerica*, 874 F.3d 1226, 1240 (10th Cir. 2017). This threshold requirement is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Federal Rule of Civil Procedure 12(b)(1) permits a party to assert the defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). By rule, any motion under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

---

[7] In addition, as discussed herein, Plaintiff's proposed amendments would be futile. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("Although [Federal Rule of Civil Procedure] 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.").

However, "because it involves a court's power to hear a case," the defense of lack of subject-matter jurisdiction "can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Thus, "[t]he objection that a federal court lacks subject-matter jurisdiction … may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Id.* at 506; *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) ("Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment."); Fed. R. Civ. P. 12(h)(3) (federal court must dismiss action if it "determines *at any time* that it lacks subject-matter jurisdiction") (emphasis added).

A challenge to subject-matter jurisdiction may come in one of two forms—a "facial" attack or a "factual" one. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). A facial attack challenges the sufficiency of the jurisdictional allegations in the complaint. *Id.* at 1002. When a party challenging subject-matter jurisdiction mounts a facial attack, courts accept the factual allegations in the complaint as true, ignoring mere conclusory allegations of jurisdiction. *Ingram v. Faruque*, 728 F.3d 1239, 1242 (10th Cir. 2013); *Penteco Corp. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991); *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir. 1971). In a factual attack, in contrast, the challenging party "go[es] beyond allegations contained in the complaint and challeng[es] the facts upon which subject matter jurisdiction is based." *Ingram*, 728 F.3d at 1242. When a party mounts a factual attack on subject-matter jurisdiction, courts may consider matters outside the complaint to resolve disputed jurisdictional facts. *Id.*

### 2. *Motions under Federal Rule of Civil Procedure 12(c)*

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings at any time after the pleadings have closed so long as the motion does not delay trial.

Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (quotation marks omitted).

Courts deciding Rule 12(c) motions apply the same standards that govern motions to dismiss under Rule 12(b)(6). *Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). "Thus, to survive [a motion for] judgment on the pleadings, [a plaintiff] must allege 'a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For a complaint to state a claim that is plausible on its face, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court must accept all well-pleaded factual allegations in the complaint as true and view them in the plaintiff's favor. *Warnick v. Cooley*, 895 F.3d 746, 750 (10th Cir. 2018). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' do not count as well-pleaded facts." *Id.* at 751 (quoting *Iqbal*, 556 U.S. at 678).

### 3.  *Motions under Federal Rule of Civil Procedure 56*

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment in its favor on one or more claims or defenses. Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and its entitlement to a judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence" that demonstrate a genuine dispute as to material facts. *Id.* at 671. If the nonmovant can show a "genuine dispute" as to material facts, the Court views the facts in the light most favorable to her. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, "unsupported conclusory allegations do not create a genuine issue of fact." *James*, 724 F.3d at 1315. Moreover, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## B.    Analysis

### 1.    Claims under 42 U.S.C. § 1983

In its Motion, Defendant first asserts that the Court lacks subject-matter jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983. (Doc. 63 at 10.) Defendant mounts a facial attack on the Court's jurisdiction over these claims. (*See id.*) Thus, in analyzing the claims, the Court will accept the factual allegations in the FAC as true, ignoring mere conclusory allegations of jurisdiction. *Ingram*, 728 F.3d at 1242; *Penteco Corp.*, 929 F.2d at 1521; *Groundhog*, 442 F.2d at 677.

As a sovereign nation, the United States is immune from suit unless it has waived its immunity, *United States v. Mitchell*, 445 U.S. 535, 538 (1980), and "[c]ourts lack subject-matter jurisdiction over a claim against the United States for which sovereign immunity has not been

waived." *Iowa Tribe of Kans. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010). In other words, "the United States may not be sued without its consent and … the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The federal government "consents to be sued only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text." *Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1187 (10th Cir. 2010) (quoting *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996)). Thus, here, the Court must consult the text of 42 U.S.C. § 1983 to determine whether it includes an unequivocal waiver of federal sovereign immunity.

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.][8]

42 U.S.C. § 1983. The statute includes no unequivocal waiver of the federal government's sovereign immunity. *Id.* As such, the United States retains its sovereign immunity from Plaintiff's claims under the statute, *Rio Grande Silvery Minnow*, 599 F.3d at 1187, and the Court lacks subject-matter jurisdiction to hear these claims. *See Beals v. U.S. Dep't of Just.*, 460 F. App'x 773, 775 (10th Cir. 2012) (dismissing Section 1983 claims against federal agency for lack of subject-matter jurisdiction).

Further, although Plaintiff has asked for leave to amend the FAC to substitute the SSA and former Acting Commissioner Kijakazi as defendants in lieu of the United States

---

[8] The remainder of Section 1983's text concerns suits against judicial officers, and Acts of Congress applicable exclusively to the District of Columbia. 42 U.S.C. § 1983.

Government, (Doc. 65 at 5; *see* Doc. 12 at 1), the requested amendment would not save her Section 1983 claims. Section 1983 applies "only to actions by state and local entities." *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). It does not apply to actions by the federal government, *id.*, or by federal officers acting under color of federal law. *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997).

Here, the FAC exclusively alleges wrongful acts by SSA employees and agents, *i.e.*, by federal officers acting under color of federal law. (*See generally* Doc. 12.) Moreover, the FAC includes no allegations regarding any acts by former Acting Commissioner Kijakazi, (*id.*); and, to the extent Plaintiff seeks to assert claims against the former Acting Commissioner in her official capacity, "[a]n action against a federal official in his official capacity is actually a suit against the sovereign—the United States." *Peterson v. Timme*, 621 F. App'x 536, 541 (10th Cir. 2015) (citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)). Thus, Section 1983 would not apply to the claims in the FAC even if the Court were to permit Plaintiff to substitute the SSA and the former Acting Commissioner as defendants. *Dry*, 235 F.3d at 1255; *Belhomme*, 127 F.3d at 1217; *Beals*, 460 F. App'x at 775. For all of these reasons, the Court will grant Defendant's Motion to the extent it seeks dismissal of Plaintiff's Section 1983 claims for lack of subject-matter jurisdiction under Rule 12(b)(1).

### 2. *Bivens Claims*

In its Motion, Defendant next seeks judgment in its favor on Plaintiff's *Bivens* claims. (Doc. 63 at 10.) The Court will analyze these claims under Rule 12(c) because Defendant challenges their validity on the pleadings. (*Id.*); Fed. R. Civ. P. 12(c).

In *Bivens*, 403 U.S. at 388, the United States Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated" certain federal

constitutional rights. *Iqbal*, 556 U.S. at 675. A *Bivens* claim is a limited "federal analog to suits brought against state officials under … [Section] 1983." *Id.* at 675-76. *Bivens* claims "can be brought only against federal officials in their individual capacities." *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009). They "cannot be asserted directly against the United States, federal officials in their official capacities, … or federal agencies." *Id.* (citations omitted). Further, *Bivens* liability must "be predicated on a violation traceable to a defendant-official's own individual actions…. [G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quotation marks and citation omitted).

In light of these standards, it is plain that Plaintiff has failed to plausibly allege a *Bivens* claim in the FAC. First, the United States—the only Defendant named in this action—is not a proper defendant in a *Bivens* suit. *Smith*, 561 F.3d at 1099.

Second, even if the Court were to grant Plaintiff's request for leave to amend to sue the SSA and former Acting Commissioner Kijakazi, it would not save her *Bivens* claims. As just noted, a plaintiff cannot assert a *Bivens* claim against a federal agency or a federal official in her official capacity. *Id.* Thus, the SSA and former Acting Commissioner Kijakazi in her official capacity are not proper *Bivens* defendants. *Id.* And to the extent Plaintiff seeks to assert a *Bivens* claim against former Acting Commissioner Kijakazi in her individual capacity, Plaintiff has not alleged any facts tracing an alleged constitutional violation to the former Acting Commissioner's "own individual actions," as would be required to state such a claim.[9] *Pahls*, 718 F.3d at 1225.

---

[9] Plaintiff has not sought leave to amend to assert claims against the SSA employees whose actions she describes in the FAC. (*See generally* Doc. 65.) However, even if she had, the Court very much doubts that it would be appropriate to recognize a *Bivens* action against these employees, because there is reason to think that Congress might be better equipped than the judiciary to create a damages remedy for their challenged actions. *Egbert v. Boule*, 596 U.S. 482, 492 (2022).

The Court will therefore grant Defendant judgment on the pleadings on the *Bivens* claims raised in the FAC pursuant to Rule 12(c).

### 3. *Appeals of Final Decisions on Applications for Disability Benefits*

Defendant next seeks judgment in its favor on Plaintiff's appeals of the Commissioner's[10] final decisions on her and her family's applications for Social Security disability benefits. (Doc. 63 at 10-12.) The Court will analyze these appeals under Rule 12(c), because Defendant challenges their validity on the pleadings. (*See id.*); Fed. R. Civ. P. 12(c).

In the FAC and attached documents, Plaintiff makes the following allegations pertinent to Defendant's arguments in opposition to the appeals.[11] Plaintiff applied to the SSA for disability benefits on June 23, 2018, and November 19, 2018. (Doc. 12 at 59, 62-63.) Plaintiff's partner, John Alderete, Jr., applied to the SSA for disability benefits on November 3, 2018. (*Id.* at 61.) Plaintiff made several attempts to apply for disability benefits on behalf of her minor child beginning on November 5, 2018. (*Id.* at 61-63, 65-69.) These attempts were foiled by SSA employees until May 31, 2019, when Plaintiff was finally able to apply for benefits on her minor child's behalf. (*Id.*)

Contrary to SSA policy, SSA employees refused Plaintiff's requests to transfer her and her family's claims to another jurisdiction to prevent former coworkers from accessing the family's private information. (*See, e.g., id.* at 5-6, 16, 62, 66, 71.) In addition, SSA employees

---

[10] Former Commissioner Andrew Saul was the head of the SSA on October 17, 2019, and January 27, 2021, when Plaintiff alleges final decisions were rendered on her and her minor child's applications for Social Security disability benefits; and, former Acting Commissioner Kijakazi was head of the agency on November 2, 2021, when Plaintiff alleges a final decision was rendered on her partner's application for such benefits. (Doc. 12 at 73, 76-77); https://www.ssa.gov/history/commissioners.html (last accessed May 1, 2024). For simplicity, the Court will refer to all of these officials as "the Commissioner" in analyzing Plaintiff's appeals of the agency's final decisions. *See* 42 U.S.C. § 405(g) (authorizing appeals of final decisions of "the Commissioner of Social Security").

[11] The Court remains mindful that Plaintiff's statements in the documents attached to the FAC are unverified. Nevertheless, construed liberally, these statements expand upon the factual allegations in the FAC and may therefore be considered under Rule 12(c). *Sanchez*, 870 F.3d at 1199.

intentionally and maliciously mishandled and delayed the filing and processing of the family's applications. (*See, e.g., id.* at 62-63, 65-77.) Among other things, SSA employees improperly referred Plaintiff and Mr. Alderete for a fraud investigation on June 8, 2019 and June 10, 2019, which the SSA's Office of the Inspector General ("OIG")[12] conducted on June 18, 2019. (*Id.* at 22, 70-72.)

The Commissioner awarded disability benefits to Plaintiff's minor child on October 17, 2019. (*Id.* at 73.) Plaintiff's application for benefits was initially denied, but she received a fully favorable decision on January 27, 2021, after she retained an attorney and a hearing was held. (*Id.* at 74-76.) Mr. Alderete's application for benefits was denied after a hearing, and the SSA's appeals council denied review on November 2, 2021.[13] (*Id.* at 75-77.)

In its Motion, Defendant argues that it is entitled to judgment on Plaintiff's appeals of the Commissioner's final decisions on her and her family's applications for disability benefits. (Doc. 63 at 10-12.) The Court's authority to review the Commissioner's final decision on a claim for benefits is governed by 42 U.S.C. § 405. Specifically, Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party … may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C.A. § 405(g). Section 405(h) adds that

> [n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social

---

[12] The reports attached to Plaintiff's Response indicate that the investigating officers were part of the Cooperative Disability Investigations ("CDI") Unit in Albuquerque. (Doc. 65-1 at 5-12, 14-20.) A "CDI unit consists of a [SSA OIG] special agent … and personnel from SSA, State disability determination services (DDS), and State or local law enforcement partners." https://oig.ssa.gov/cdi/ (last accessed May 1, 2024).

[13] The Court affirmed the Commissioner's final decision denying Mr. Alderete's claim for disability benefits on June 30, 2023, in *Alderete v. Social Security Administration*, Civ. No. 22-111 LF (D.N.M. Jun. 30, 2023).

Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28[14] to recover on any claim arising under this subchapter.

42 U.S.C.A. § 405(h).

By its terms, Section 405(g) applies only to "a 'party' to a final agency decision of the [SSA] 'made after a hearing.'" *Cordoba v. Massanari*, 256 F.3d 1044, 1047 (10th Cir. 2001). The 60-day time limit for filing an appeal under Section 405(g) is a condition of the United States' waiver of sovereign immunity and, though not jurisdictional, is strictly construed. *Bowen v. City of New York*, 476 U.S. 467, 478-79 (1986).

Here, the Court agrees with Defendant that Plaintiff has failed to plausibly assert appeals of the Commissioner's final decisions on her and her family's applications for disability benefits, for two reasons. First, Plaintiff has not plausibly asserted an appeal on Mr. Alderete's claim for benefits because she has not alleged that she was a party to his SSA hearing or to the Commissioner's final decision on his application for benefits. *Cordoba*, 256 F.3d at 1047; (*see generally* Doc. 12.)

Second, accepting Plaintiff's allegations in the FAC and attached documents as true, her appeal is untimely as to all three of the decisions at issue. According to Plaintiff, the Commissioner rendered his final decisions on the minor child's, Plaintiff's, and Mr. Alderete's applications on October 17, 2019, January 27, 2021, and November 2, 2021, respectively. (Doc. 12 at 73, 76-77.) The next business day after 60 days from November 2, 2021, was January 3, 2022, but Plaintiff did not file this action until February 28, 2022. She therefore failed to satisfy Section 405(g)'s 60-day time limit as to any of the challenged decisions. 42 U.S.C. § 405(g). In addition, she has failed to proffer any reason why this statute of limitation should be tolled.

---

[14] Section 1331 of Title 28 grants federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," and Section 1346 grants federal district courts original jurisdiction over certain civil actions against the United States. 28 U.S.C. §§ 1331, 1346.

*Bowen*, 476 U.S. at 479–82. The Court will therefore grant Defendant judgment on the pleadings on Plaintiff's appeals of the Commissioner's final decisions on her and her family's claims for disability benefits pursuant to Rule 12(c). *See Lubin v. Berryhill*, Civ. No. 18-609, 2019 WL 1062099, at *3 (D.N.M. Mar. 6, 2019) (dismissing complaint seeking review of Commissioner's final decision because it was untimely).

### 4.  *Employment Discrimination Claims Under Title VII and the Rehabilitation Act*

In its Motion, Defendant next requests judgment in its favor on Plaintiff's employment discrimination claims. (Doc. 63 at 12.) The Court analyzes this portion of Defendant's Motion as a Rule 56 motion for summary judgment because both parties have submitted and relied on evidentiary material in their briefing on the subject, and Defendant's factual challenge based on failure to exhaust administrative remedies is not jurisdictional. (Doc. 63 at 6, 12; Doc. 63-1; Doc. 63-2; Doc. 65 at 5-7; Doc. 65-1 at 33-42); *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020).

Except as otherwise noted, the following facts related to Plaintiff's employment discrimination claims are undisputed for purposes of the present Motion. Plaintiff began working for the SSA as a teleservice representative on or about September 17, 2006, and resigned from her employment with the agency on or about July 6, 2018.[15] (Doc. 63-1 at 1.) SSA supervisors and other employees mistreated Plaintiff on many occasions over the course of her employment, from 2006 to 2007, from 2010 to 2012, in 2012, and from 2016 to 2018, and this mistreatment included discriminating against her due to her illness.[16] (Doc. 12 at 4-5.)

---

[15] In an unverified document attached to the FAC, Plaintiff alleged that she resigned on July 3, 2018. (Doc. 12 at 60.) However, even if the Court were to treat this unverified allegation as evidence, the resulting factual dispute would be immaterial because the three-day difference would not change the Court's reasoning.

[16] Many of Plaintiff's attestations about being mistreated and discriminated against while working at the SSA are vague and conclusory. (*See* Doc. 12 at 4-5.) However, Defendant has not challenged them on that basis, (*see*

On November 12, 2018—about 129 days after her resignation on or about July 6, 2018—Plaintiff e-mailed a Counseling Intake/Assignment Form ("Intake Form") to the Office of Civil Rights and Equal Opportunity ("OCREO"),[17] alleging that SSA supervisors and other employees had discriminated against her due to her race and disability in the course of her employment.[18] (Doc. 62 at 10-11; Doc. 65-1 at 33-37, 41.) In the Intake Form, Plaintiff stated, among other things:  "I was unaware of the 45 days and formally request consideration due to major medical issues. I was mentally and medically unable to address this. I'm just now trying to get things together somewhat." (Doc. 65-1 at 36.) The Intake Form is not sworn, and Plaintiff did not declare under penalty of perjury that the statements in it are true. (*See id.* at 33-37.)

On June 27, 2019, Plaintiff inquired about the status of her complaint. (Doc. 62 at 11.) On the same date, OCREO employee Chrystal Johnson responded to Plaintiff's inquiry by e-mail, stating in pertinent part:

> Thank you for reaching out to us. As discussed, we searched our records for your EEO Intake and w[ere] unable to locate the record. Were you able to retrieve the email confirmation issued for your EEO Intake submission? Attached is an EEO Intake Form if you are still interested in filing an EEO claim.

(*Id*.)

Plaintiff has neither alleged nor cited to any evidence tending to show that she responded to Ms. Johnson's June 27, 2019 message, resubmitted the Intake Form to the OCREO, or

---

*generally* Doc. 63), and the Court concludes that Defendant is entitled to summary judgment on Plaintiff's employment discrimination claims for other reasons, as explained below.

[17] The OCREO "provides national direction on a wide range of SSA's equal employment opportunity (EEO), civil rights and diversity activities. This includes … processing, adjudicating, and resolving complaints of discrimination in compliance with all applicable laws, regulations, and other guidance issued by the Equal Employment Opportunity Commission[.]" https://www.ssa.gov/eeo (last accessed May 1, 2024).

[18] In an unverified attachment to the FAC, Plaintiff alleged that she e-mailed the Intake Form to the OCREO on November 7, 2018. (Doc. 12 at 62.) However, in her Response, she admits and submits evidence showing that she mailed the form on November 12, 2018. (Doc. 65 at 5-6; Doc. 65-1 at 41.) Thus, there is no genuine factual dispute on this point.

otherwise pursued administrative remedies for her discrimination claims in any way after June 27, 2019. (*See generally* Doc. 65.) Alan Moshe Glickman, the Deputy Center Director of the Center for Complaint Resolution at the OCREO, declared that he searched the relevant agency database but did not find "any formal or informal EEO complaints filed by [Plaintiff]." (Doc. 63-2.)

On June 28, 2019, Ms. Johnson sent Plaintiff an e-mail message with the "EEO complaint (Investigative Plan and Document Request)" for a different person attached. (Doc. 65-1 at 38.) Plaintiff responded to this message on July 1, 2019, stating, "I reviewed this attachment and it appears to be another individual's private information so I'm confused how this applies to me. Please provide details." (*Id.* at 38-39.) On the same day, Ms. Johnson sent Plaintiff an e-mail message asking her to "[p]lease disregard" the June 28, 2019 message. (*Id.* at 40.)

In its Motion, Defendant seeks summary judgment on the employment discrimination claims raised in the FAC for two reasons. Specifically, Defendant argues that it is entitled to summary judgment on these claims because Plaintiff (1) did not name the proper party for these claims and (2) failed to timely exhaust her administrative remedies before pursuing them. (Doc. 63 at 12.)

Defendant's first argument is plainly correct. A federal employee seeking to pursue employment discrimination claims based on race and disability must proceed under Title VII and Section 501 of the Rehabilitation Act, respectively. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (Title VII); *Ford v. West*, 222 F.3d 767, 773 (10th Cir. 2000) (Title VII); *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1477 (10th Cir. 1988) (Rehabilitation Act); *Padilla v. Mnuchin*, 836 F. App'x 674, 677 n.1 (10th Cir. 2020) (Rehabilitation Act). And to bring a civil action for employment discrimination under Title VII and Section 501, a federal employee must

name "the head of [a] department, agency or unit, as appropriate, [as] the defendant." 42 U.S.C. § 2000e-16(c); *Johnson*, 861 F.2d at 1477-78. In the FAC, however, Plaintiff has sued the "United States Government." (Doc. 12 at 1.) Thus, as a matter of law, Plaintiff has not named the proper defendant for her employment discrimination claims.

As for Defendant's second argument, the Court agrees that Plaintiff has failed to show a genuine issue of material fact regarding whether she timely exhausted her administrative remedies. Federal employees alleging discrimination prohibited by Title VII or Section 501 of the Rehabilitation Act must exhaust their administrative remedies by "comply[ing] with specific administrative complaint procedures." *Hickey*, 969 F.3d at 1118. "These procedures are set forth in Part 1614 of Chapter 29 of the Code of Federal Regulations," and are "not a jurisdictional prerequisite for suit but [are] claims-processing rule[s] that the employer may raise as an affirmative defense." *Id.* As an affirmative defense, failure to exhaust administrative remedies is subject to waiver and estoppel principles; however, courts must enforce mandatory exhaustion requirements if the employer properly raises the employee's failure to comply with them as a defense. *Id.* Moreover, unlike many affirmative defenses, timely exhaustion of administrative remedies is a condition precedent to suit that the employee bears the burden of proving. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167–68 (10th Cir. 2007).

 "[B]efore a federal civil servant can sue her employer for discrimination," she must, among other things, "initiate contact with an Equal Employment Opportunity counselor at her agency within 45 days of the date of the matter alleged to be discriminatory." *Hickey*, 969 F.3d at 1118 (quoting *Green v. Brennan*, 578 U.S. 547, 549-50 (2016)) (quotation marks, brackets, and ellipsis omitted); *see* 29 C.F.R. § 1614.105(a)(1). The agency *must* extend the 45-day time limit

> when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably

should not have been known that the discriminatory matter or personnel action occurred, [or] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits.

29 C.F.R. § 1614.105(a)(2). In addition, the agency *may* extend the 45-day time limit "for other reasons considered sufficient by the agency[.]" *Id.*; *Hickey*, 969 F.3d at 1123.

In its Motion, Defendant specifically raises Plaintiff's failure to exhaust administrative remedies as an affirmative defense to her employment discrimination claims. (Doc. 63 at 12; *see also* Doc. 68 at 4.) In her Response, Plaintiff counters that she was "prevented" from exhausting her administrative remedies because the OCREO lost her Intake Form and instructed her to file another one "instead of finding out what happened[.]" (Doc. 65 at 5-6.) But there are two problems with Plaintiff's argument.

First, assuming without deciding that Plaintiff has shown a genuine factual dispute regarding whether she successfully submitted her Intake Form on November 12, 2018, it is undisputed that she failed to submit the form or otherwise initiate contact with an EEO counselor within 45 days of July 6, 2018, when she resigned from her employment with the SSA. And though her Intake Form includes the allegations that she was "unaware of the 45 days" and "mentally and medically unable to address this" earlier, (Doc. 65-1 at 36), these unverified, conclusory allegations are inadequate to create a genuine issue of material fact on summary judgment. *See L&M Enterprises, Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) ("Unsupported conclusory allegations … do not create a genuine issue of fact."). Thus, Plaintiff has failed to show a genuine issue of material fact regarding whether she was entitled to an extension of the 45-day deadline under 29 C.F.R. § 1614.105(a)(2), and her undisputed failure to meet that deadline is fatal to her employment discrimination claims. *Hickey*, 969 F.3d at 1118.

Second, in the unique and undisputed circumstances presented here, the OCREO's loss of Plaintiff's untimely Intake Form does not equitably excuse Plaintiff from timely exhausting her administrative remedies or otherwise estop Defendant from relying on her failure to do so.[19] Initially, Plaintiff fails to identify any legal authority supporting her entitlement to such equitable relief. (*See generally* Doc. 65.)

Further, it would defy both equity principles and common sense to excuse Plaintiff from responding in any way to Ms. Johnson's request that she resubmit her Intake Form when she plainly could have responded,[20] and she knew that the agency had searched for the form but was unable to find it and expected her to resubmit it "if [she was] still interested in filing an EEO claim." (Doc. 62 at 11.) It is particularly noteworthy in this regard that Plaintiff not only failed to resubmit the form, but also failed to even tell the OCREO that she was *not* going to resubmit it but still wanted to pursue her claim. In other words, as of June 27, 2019, only Plaintiff had the ability to move the administrative process forward, the OCREO reasonably asked her to take a simple, nonburdensome step to do so, and in response Plaintiff unreasonably slept on her rights. In these circumstances, equity cannot aid her. *See generally Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1091 (10th Cir. 2014) ("[E]quity aids the vigilant and not those who slumber on their rights.")*.*

In sum, because Plaintiff has not named the proper party, undisputedly failed to timely exhaust her administrative remedies, and has not shown a genuine issue of material fact

---

[19] The Court does not address whether the OCREO's loss of an intake form submitted *before* the expiration of the 45-day deadline would equitably toll any subsequent deadlines, and if so for how long, because here it is undisputed that Plaintiff did not submit her Intake Form until well after the deadline expired.

[20] Plaintiff neither alleges nor submits any evidence to show that she was unable to resubmit the Intake Form or otherwise respond to Ms. Johnson's June 27, 2019 request that she do so. (*See generally* Doc. 65.) Also, the evidence that Plaintiff promptly responded to Ms. Johnson's June 28, 2019 e-mail regarding another individual, and the fact that Plaintiff submitted a copy of the Intake Form with her Response to Defendant's Motion, strongly suggest that Plaintiff could have promptly responded to Ms. Johnson's June 27, 2019 e-mail and resubmitted the form. (Doc. 65-1 at 33-40.)

regarding whether her failure to timely exhaust should be equitably excused, Defendant is entitled to summary judgment on Plaintiff's Title VII and Rehabilitation Act claims. *See Hickey*, 969 F.3d at 1124.

### 5. Claims under the FTCA

Finally, in its Motion, Defendant seeks judgment in its favor on Plaintiff's claims under the FTCA. (Doc. 63 at 13-18.) The Court will discuss the Rules under which it analyzes Defendant's arguments in opposition to these claims in the subsections below, because the applicable Rules vary from claim to claim.

Before a plaintiff can pursue a claim under the FTCA in federal court, she must first present the claim "in writing to the appropriate Federal agency[.]" 28 U.S.C. § 2401(b). Here, it is undisputed that Plaintiff submitted her tort claims to the SSA's Office of the General Counsel ("OGC") via the Form SF-95 attached to the FAC. (Doc. 12 at 13-18.) In this Form SF-95, Plaintiff alleged three types of unlawful conduct by SSA employees, *i.e.*, that they: (i) improperly referred Plaintiff and her partner for a fraud investigation; (ii) invaded Plaintiff's and her family's privacy, including by conducting the fraud investigation; and, (iii) engaged in wrongful employment actions. (*Id.*) Because only the FTCA claims raised in Plaintiff's Form SF-95 are properly exhausted under Section 2401(b), the Court limits its analysis to these claims.

### i. Referral for Fraud Investigation

In her Form SF-95, Plaintiff alleged that SSA employees improperly referred her and Mr. Alderete for a fraud investigation in the course of processing the family's claims for Social Security disability benefits, contrary to the SSA's usual custom, policy, or practice.[21] (*Id.* at 15-

---

[21] Although Plaintiff claimed in her Form SF-95 that SSA employees made the challenged referral "frivolous[ly]" and "malicious[ly]," her only nonconclusory allegation in support is that the referral was "unheard of" under the circumstances. (Doc. 12 at 15-16.)

16.) In its Motion, Defendant argues that the Court lacks jurisdiction over this claim because Plaintiff has not plausibly alleged a "private person analogue" under New Mexico law,[22] and because there is in fact no such analogue. (Doc. 63 at 14-16.) The Court will analyze this portion of Defendant's Motion as a facial attack under Rule 12(b)(1) because Defendant relies on the pleadings to challenge the Court's subject-matter jurisdiction. (*Id.*)

The FTCA "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment." *Brownback v. King*, 592 U.S. 209, 212 (2021) (quotation marks omitted). Specifically, the FTCA permits civil actions against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Thus, to state a claim under the FTCA a plaintiff must, among other things, plausibly allege that the United States would be liable under the applicable state's laws if it were a private person. *Id.*; 28 U.S.C. § 2674; *Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014). "[A] plaintiff must plausibly allege all … FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." *Brownback*, 592 U.S. at 217-18.

In *United States v. Agronics*, the Tenth Circuit affirmed the dismissal of a plaintiff's FTCA claim because the challenged conduct had no "analogy to the private sphere." 164 F.3d 1343, 1346 (10th Cir. 1999). As the *Agronics* court explained,

---

[22] Courts "look to the law of the state in which the alleged tortious activity occurred to resolve questions of liability under the FTCA." *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995). In this case, it is undisputed that the alleged tortious activity took place in New Mexico. (*See generally* Docs. 12, 63, 65.)

the FTCA does not apply where the claimed [misconduct] arises out of the failure of the United States to carry out a federal statutory duty in the conduct of its own affairs…. [T]he FTCA's waiver of sovereign immunity is limited to conduct for which a private person could be held liable under state tort law, … and federal statutory duties regarding peculiarly administrative acts generally involve a type of conduct that private persons could not engage in, and hence could not be liable for under local law.

*Id.* (quotation marks, brackets, and citation omitted).

Here, the "peculiarly administrative act[]" of referring an applicant for a fraud investigation in the course of processing a claim for Social Security disability benefits has no "analogy to the private sphere." *Id.* To state the obvious, a private person cannot process a claim for Social Security disability benefits or refer a case for a fraud investigation by the OIG. *Cf. Cortez v. E.E.O.C.*, 585 F. Supp. 2d 1273, 1291 (D.N.M. 2007) (finding no FTCA liability because "there is no private analogue to the EEOC's work in processing and investigating discrimination charges").

Also, although a private person could presumably *report* an applicant's suspected fraud to the OIG, Plaintiff has not plausibly alleged that a private person's failure to comply with an SSA custom, policy, or practice in doing so would render him or her liable to the applicant under New Mexico law. *Cf. Cortez*, 585 F. Supp. 2d at 1291 (noting that federal agency's violation of federal statutes or regulations would not breach any state-law tort duty). Thus, under the circumstances alleged here, SSA employees' allegedly improper referral of Plaintiff and Mr. Alderete for a fraud investigation is not actionable under the FTCA, and the Court lacks jurisdiction to hear Plaintiff's FTCA claim based on this conduct. *Brownback*, 592 U.S. at 217-18. The Court will dismiss this claim under Rule 12(b)(1).

ii. *Invasion of Privacy*

Next, in her Form SF-95, Plaintiff alleges that SSA employees breached and invaded her and her family's privacy by: (1) falsely and maliciously accusing Plaintiff and her family of malingering,[23] (Doc. 12 at 15-16; *see id.* at 4); (2) failing and refusing to transfer Plaintiff's, her mother's, her minor child's, and Mr. Alderete's claims for Social Security disability benefits to another jurisdiction to prevent her former coworkers from accessing the family's private information while processing their claims, (*id.* at 16; *see id.* at 4-6); and, (3) conducting a fraud investigation in which they interviewed Plaintiff and Mr. Alderete and "made [them] look like [they] were lying about [their] disabilities." (*Id.* at 17; *see id.* at 4.) In its Motion, Defendant argues that it is entitled to judgment on these claims as a matter of law because: (1) a private person would not be liable for the challenged conduct under New Mexico law; (2) Plaintiff fails to state a claim for invasion of privacy on a theory of false light, publication of private facts, or appropriation; and, (3) all but one of Plaintiff's invasion of privacy claims are barred by the FTCA's two-year statute of limitations. (Doc. 63 at 16-17.)

Taking Defendant's last argument first, the Court agrees that Defendant is entitled to summary judgment on Plaintiff's invasion of privacy claims based on SSA employees' failure and refusal to transfer Plaintiff's, her mother's, her minor child's, and Mr. Alderete's applications for disability benefits to another jurisdiction, because these claims are time-barred as a matter of law. The Court analyzes this portion of Defendant's Motion as a Rule 56 motion for summary judgment because Plaintiff has relied on evidentiary material in her briefing on the

---

[23] It is undisputed that one or more SSA employees made the challenged accusations in the fraud investigation referral at issue, and the Court remains mindful of its holding that the referral itself is not actionable under the FTCA due to the lack of a private person analogue, as discussed in Section II.B.5.i, above. However, out of an abundance of caution, the Court analyzes Plaintiff's claims based on the accusations separately, because there are conceivably circumstances in which a private person's false accusations of malingering could support a tort claim under New Mexico law.

subject, and because the FTCA's statute of limitations is not jurisdictional. (Doc. 63 at 17; Doc. 65 at 8-9; *see* Doc. 12 at 19-21, 76); *United States v. Wong*, 575 U.S. 402, 410-12 (2015).

Before filing an FTCA claim in federal court, a plaintiff must present the claim "in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b); *see also Gabriel v. United States*, 683 F. App'x 671, 672 (10th Cir. 2017). For purposes of the present Motion, it is undisputed that Plaintiff first sent her Form SF-95 to the OGC, and the OGC first received it, on June 15, 2021.[24] (Doc. 12 at 19-21; *see* Doc. 63 at 17.) Under Section 2401(b), Defendant is entitled to judgment as a matter of law on any of Plaintiff's FTCA claims that undisputedly accrued more than two years earlier, that is, before June 15, 2019.

In the FAC, Plaintiff attested that SSA employees failed and refused to transfer her and her family's disability claims, and that a former coworker consequently accessed the family's private information during claims processing, on four occasions, specifically: (1) when D.J. Madrid failed to move Plaintiff's mother's disability claims to another jurisdiction in September 2012, (Doc. 12 at 5; *see also id.* at 42-44); (2) when "Fran in the Rio Rancho office" refused to move Plaintiff's family's claims to another jurisdiction on November 19, 2018, (*id.* at 5-6); (3) when former coworker Daveena Johnson "t[ook]" Plaintiff's claim for benefits on November 19, 2018, (*id.* at 6); and, (4) when James Sandoval and Wendy LNU failed to "chang[e] [Plaintiff's] jurisdiction to another office" on April 29, 2019. (*Id.* at 6.) All of these events undisputedly occurred before June 15, 2019. Moreover, Plaintiff has not alleged or presented any evidence to

---

[24] Plaintiff attached to her FAC what appears to be a document confirming that the OGC received her Form SF-95 via fax on June 15, 2021. (*See* Doc. 12 at 19.) Additionally, Plaintiff included what appears to be tracking information showing that the OGC received the Form SF-95 via mail on June 16, 2021. (*See id.* at 20-21.) And although Plaintiff stated in one unverified attachment to the FAC that she faxed and mailed the Form SF-95 in *2019*, in another unverified attachment she stated that she faxed and mailed the form in *2021*. (*Id.* at 28, 76.) Thus, Plaintiff's unverified allegation that she submitted the form in 2019 appears to be a typographical error.

show that she was unaware of these events when they occurred, and it is therefore undisputed that any claims based on them thus accrued at that time. (*See generally* Doc. 65); *Bayless v. United States*, 767 F.3d 958, 965 (10th Cir. 2014) (holding that FTCA claim generally accrues on the date of injury, unless the plaintiff is "blamelessly unaware of [her] claim"). As such, Plaintiff's claims based on these events are barred by the FTCA's two-year statute of limitations as a matter of law.[25] 28 U.S.C. § 2401(b).

However, the Court cannot say that Plaintiff's invasion of privacy claims based on the OIG's fraud investigation and the accusations of malingering that led to it are time-barred as a matter of law. It is undisputed that the challenged fraud investigation occurred on June 18, 2019, within two years of Plaintiff's June 15, 2021 submission of her Form SF-95. (*See, e.g.*, Doc. 12 at 17; Doc. 65-1 at 9, 18.) And Defendant presents no evidence or argument to challenge Plaintiff's allegations that because OIG officers lied to her about the nature of their investigation, she neither knew nor should have known of the accusations of malingering that led to it until she reviewed her and her partner's SSA records "long after the event."[26] (Doc. 12 at 15, 17; Doc. 63); *see Bayless*, 767 F.3d at 965 (holding that where a plaintiff is "blamelessly unaware" of her

---

[25] In an untitled, unverified document attached to the FAC, Plaintiff further alleged that Mr. Madrid and Rebecca Medina were formerly her coworkers, and that Ms. Medina handled the filing of Plaintiff's minor child's application for benefits in May 2019. (Doc. 12 at 22-25.) And in an unverified "timeline leading to tort case," (*id.* at 30), Plaintiff alleged that: (a) as late as January 2013, she asked SSA employees to move her mother's claim to another jurisdiction, (*id.* at 48); (b) in November 2018, she told SSA employee Jennifer Campbell she could not go to her local SSA office because she had former coworkers there, (*id.* at 62); (c) from January to April 2019, Ms. Medina held paperwork related to Plaintiff's claim, (*id.* at 65); (d) in May 2019, Mr. Alderete received a letter regarding his claim with what appeared to be Mr. Madrid's initials on it, (*id.* at 68-69); (e) from April to June 5, 2019, Ms. Medina made notations in Plaintiff's and Mr. Alderete's claim files, (*id.* at 65, 69); (f) in May 2019, Ms. Medina left Plaintiff a phone message about her minor child's claim, (*id.* at 69); and, (g) on June 10, 2019, Plaintiff asked an SSA employee to remove Ms. Medina and Mr. Madrid from her minor child's case. (*Id.* at 71.) However, even if the Court were to assume that Plaintiff wishes to assert invasion of privacy claims based on each of these alleged events, which is by no means clear, these claims would also be time-barred because they undisputedly occurred before June 15, 2019, and Plaintiff has neither argued nor presented evidence that they accrued after that date.

[26] In the unverified timeline attached to the FAC, Plaintiff alleged that she discovered this information in December 2019. (Doc. 12 at 73.)

FTCA claim, the claim accrues "when that reasonably diligent plaintiff knows or should have known of both the existence of and cause of the injury"). Thus, Defendant has failed to carry its initial summary judgment burden of showing the absence of a genuine issue of material fact and its entitlement to a judgment as a matter of law on the question of whether Plaintiff timely exhausted her administrative remedies under the FTCA with respect to these claims. *Adler*, 144 F.3d at 670-71.

Having found that Plaintiff's FTCA claims based on SSA employees' accusations of malingering and the OIG's fraud investigation survive Defendant's statute of limitations argument, the Court must address Defendant's other challenges to these claims. And as explained below, based on the undisputed record evidence, the Court agrees with Defendant that there is no analogous private-party tort liability for the challenged conduct. The Court will analyze this portion of Defendant's Motion as a factual attack under Rule 12(b)(1) because Defendant has challenged the facts on which the Court's subject-matter jurisdiction is based and Plaintiff has responded in kind. (*See* Doc. 63-3; Doc. 63-4; Doc. 65-1 at 5-12, 14-20); *Ingram*, 728 F.3d at 1242. Alternatively, the Court will analyze this portion of the Motion under Rule 56, because Defendant has also asserted its entitlement to summary judgment on Plaintiff's claims. (Doc. 63 at 1, 9.)

For purposes of the present Motion, the following facts are undisputed except as noted. On June 18, 2019, two OIG officers went to Plaintiff's and Mr. Alderete's home pursuant to a referral for an investigation of "possible fraud or similar fault" made by an employee at the SSA Albuquerque Field Office ("AFO"). (Doc. 63-3 at 1; Doc. 63-4 at 1; Doc. 65-1 at 7, 9, 16, 18-19.) The AFO employee made the referral because he or she "suspect[ed]" Plaintiff and Mr. Alderete of "malingering due to multiple family filings." (*Id.*)

Mr. Alderete greeted the OIG officers on the porch and told them he would have Plaintiff "respond at the door." (Doc. 65-1 at 9, 18.) Plaintiff and Mr. Alderete agreed to speak to the officers and consented to being recorded before the officers interviewed them. (*Id.*) The interviews were conducted outside. (*Id.*) In response to the officers' requests, Plaintiff and Mr. Alderete produced their state identification cards. (*Id.*) There is no evidence in the record that any of the information the OIG officers included in their reports regarding the investigation was false.[27]

As a matter of law, a private person would not be liable to Plaintiff under New Mexico tort law for the above conduct. In her Form SF-95, FAC, and Response to Defendant's Motion, Plaintiff refers to the torts of defamation and invasion of privacy.[28] (Doc. 12 at 4, 17; Doc 65 at 3, 7.) However, as explained below, the undisputed record evidence shows that the challenged conduct does not satisfy the required elements of either of these torts.

Under New Mexico law, a plaintiff must establish nine elements to prove a prima facie case of defamation. *Smith v. Durden*, 2012-NMSC-010, ¶ 27, 276 P.3d 943, 950. Among them are the elements that the defendant made a communication, concerning the plaintiff, that

---

[27] In her FAC, Plaintiff refers generally to "false allegations" against her and her family, but she does not identify any false information in the OIG officers' reports. (Doc. 12 at 4-6.) Similarly, in her Form SF-95, Plaintiff alleged that the officers made "ridiculous," "comical" observations about her and Mr. Alderete that made them "look like [they] were lying about [their] disabilities." (*Id.* at 17.) Again, however, she stopped short of alleging that any of the officers' observations were false. (*See id.*)

[28] Plaintiff also refers to negligence in her Form SF-95, FAC, and Response. (Doc. 12 at 4, 17; Doc. 65 at 2.) Factually, however, she invariably alleges that SSA employees intended to harm her, which removes their alleged misconduct from the realm of negligence. (*See generally* Doc. 12); 57A Am. Jur. 2d Negligence § 29. Also, nowhere does Plaintiff present a discernible argument regarding how SSA employees' challenged acts and failures to act breached a duty of care that a private person in New Mexico would owe. (*See generally* Docs. 12, 65); *Zamora v. St. Vincent Hosp.,* 2014-NMSC-035, ¶ 22, 335 P.3d 1243, 1249 ("A negligence claim requires that the plaintiff establish four elements: (1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury."). Thus, negligence is not a viable private person analogue for Plaintiff's FTCA claims based on the challenged fraud investigation and the accusations that led to it.

included a statement of fact, which was false. N.M. U.J.I. 13-1002(B)(2)-(4). Here, there is evidence that the SSA employee who referred Plaintiff and Mr. Alderete for a fraud investigation made a communication about Plaintiff and Mr. Alderete in the referral, and that the communication included a statement of fact, *i.e.*, that multiple members of the family had filed for benefits. However, Plaintiff has neither alleged nor demonstrated that this statement of fact is false.[29]

Also, though Plaintiff alleges that SSA employees falsely and affirmatively accused her and Mr. Alderete of malingering, the undisputed record evidence shows that the employee who made the challenged referral merely reported a *suspicion* of malingering. And a suspicion, by its very nature, is not a statement of fact.[30] *Cf. Schuler v. McGraw-Hill Companies, Inc.*, 989 F. Supp. 1377, 1385, 1387, 1389 (D.N.M. 1997), *aff'd*, 145 F.3d 1346 (10th Cir. 1998) (holding that questions are not statements of fact in the context of a defamation action).

Likewise, it is undisputed that the OIG officers who conducted the challenged fraud investigation made communications concerning Plaintiff and Mr. Alderete by way of their reports, and that these reports included statements of fact. However, Plaintiff has neither alleged nor presented any evidence to show that any of the statements of fact in the reports are false. For these reasons, Plaintiff has not shown a genuine factual dispute regarding whether the United States, if a private person, would be liable to her for defamation under New Mexico law based on

---

[29] On the contrary, in the unverified timeline attached to the FAC, Plaintiff admitted that she, her minor child, and Mr. Alderete all applied for Social Security disability benefits between June 2018 and May 2019. (Doc. 12 at 59, 61-63, 69.)

[30] Of course, a suspicion, like an opinion, might be actionable if it were to "impl[y] the allegation of undisclosed defamatory facts as the basis for" it. *Schuler v. McGraw-Hill Companies, Inc.*, 989 F. Supp. 1377, 1384 (D.N.M. 1997), *aff'd*, 145 F.3d 1346 (10th Cir. 1998). Here, however, the basis of the suspicion, *i.e.*, Plaintiff's family's multiple filings, was undisputedly both truthful and disclosed in the challenged communication.

the OIG's fraud investigation or the accusations that led to it. 28 U.S.C. §§ 1346(b)(1), 2674; *Gallardo*, 752 F.3d at 870.

Nor does the challenged conduct satisfy all of the required elements of the tort of invasion of privacy. New Mexico recognizes four distinct categories of this tort: "false light, intrusion, publication of private facts, and appropriation." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1217 (10th Cir. 2007). As explained below, Plaintiff has failed to show a genuine factual dispute regarding whether the challenged fraud investigation and the accusations that led to it satisfy the required elements of any of the four categories of this tort.

    *(a) False Light.*

"The tort of false light invasion of privacy is a close cousin of defamation. The essence of this tort … is the placing of another in a false light in the public eye." *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1256 (D.N.M. 2012) (quoting *Andrews v. Stallings*, 1995-NMCA-015, ¶ 59, 892 P.2d 611, 626; *Moore v. Sun Pub. Corp.*, 1994-NMCA-104, ¶ 28, 881 P.2d 735, 742) (citations, quotation marks, and brackets omitted). To establish this tort, a plaintiff must show "unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." *Bhandari v. VHA Sw. Cmty. Health Corp.*, Civ. No. 09-0932, 2011 WL 1336512, at *18 (D.N.M. Mar. 30, 2011).

> In the absence of proof of a specific false statement of fact, unfairness, improper tone, or unfounded implication or innuendo, even though they might sound as though they fit the phrase "false light," will no sooner support a recovery for false-light invasion of privacy than for defamation.

*Andrews*, 1995-NMCA-015 at ¶ 59, 892 P.2d at 625–26 (quotation marks and brackets omitted).

Here, however, as already noted, Plaintiff has neither alleged nor presented evidence to show that any SSA employee or OIG officer communicated a specific false statement of fact

about her or Mr. Alderete in the course of conducting the challenged fraud investigation or making the accusations that led to it. Rather, at most, Plaintiff has alleged that SSA employees and OIG officers acted "unfair[ly]" and that their communications used an "improper tone" and included "unfounded implication or innuendo." *Id.* Thus, Plaintiff has failed to show a genuine factual dispute regarding whether the United States, if a private person, would be liable to her for false light invasion of privacy under New Mexico law based on the challenged conduct.

*(b) Intrusion Upon Seclusion*

The tort of invasion of privacy by intrusion upon seclusion "involves an invasion of the plaintiff's 'private' space or solitude—eavesdropping on private conversations or peeping through the bedroom window, for example." *Moore*, 1994-NMCA-104 at ¶ 28, 881 P.2d at 743; *see McNutt v. New Mexico State Trib. Co.*, 1975-NMCA-085, ¶ 8, 538 P.2d 804, 808 (defining the tort as "[i]ntrusion upon the plaintiff's physical solitude or seclusion (or into his private affairs)") (ellipsis omitted). Intrusion upon seclusion "appears to be based on the manner in which a defendant obtains information, and not what a defendant later does with the information[.]" *Fernandez-Wells v. Beauvais*, 1999-NMCA-071, ¶ 14, 983 P.2d 1006, 1010. There is no intrusion upon seclusion where plaintiffs "voluntarily act to bring themselves temporarily out of … seclusion," such as by answering a knock at the door. *Alvarado*, 493 F.3d at 1218 n.6.

Here, it is undisputed that Plaintiff and Mr. Alderete voluntarily disclosed their private information to the SSA when they applied for Social Security disability benefits. It is also undisputed that Plaintiff and Mr. Alderete voluntarily brought themselves out of the seclusion of their home when they chose to answer OIG officers' knock at the door and to exit their home to talk to the officers. Thus, Plaintiff has failed to show a genuine issue of material fact regarding

whether Defendant's employees tortiously invaded her privacy by intruding upon her seclusion. *Id.*

### (c) Public Disclosure of Private Facts

The elements of invasion of privacy by public disclosure of private facts are: "(i) public disclosure of private facts; (ii) disclosure which would be objectionable to a reasonable person; and (iii) a lack of legitimate public interest in the information." *Archuleta*, 898 F. Supp. 2d at 1256. "[P]ublicity is an element of public disclosure of private facts," and in general, publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Fernandez-Wells*, 1999-NMCA-071 at ¶¶ 8-9, 983 P.2d at 1008. However, there is an exception to this rule when "the limited 'public' to which the disclosure is made is the portion of the public whose opinion matters most to the injured party—such as fellow employees, club members, church members, family, or neighbors." *Id.* at ¶¶ 9-10, 983 P.2d at 1009 (quotation marks omitted).

Here, the challenged conduct undisputedly fails to satisfy the elements of public disclosure of private facts in at least three ways. First, Plaintiff has neither alleged nor cited to any evidence tending to show that the SSA employee who referred her and Mr. Alderete for a fraud investigation reported the family's multiple filings or the employee's suspicions of malingering to anyone other than the OIG. Nor has Plaintiff alleged or cited to any evidence to show that the OIG officers who investigated her and Mr. Alderete disclosed the contents of their reports to anyone other than the SSA employees processing the family's disability claims. Thus, Plaintiff has neither alleged nor shown a genuine factual dispute regarding the existence of publicity as used in its usual sense. *Id.* at ¶¶ 8-9, 983 P.2d at 1008.

Second, even assuming without deciding that these disclosures to an extremely limited 'public' would be sufficient to constitute publicity in the exceptional sense, *id.* at ¶¶ 9-10, 983 P.2d at 1009, the Court finds as a matter of law that the employees and officers receiving the disclosures had a legitimate interest in the information, because it is undisputed that they received and used the information to investigate and process Plaintiff's and Mr. Alderete's claims. (*See generally* Docs. 12, 65.) Thus, Plaintiff has not shown a genuine factual dispute regarding the absence of such an interest, as would be required to prove tortious public disclosure of private facts. *Archuleta*, 898 F. Supp. 2d at 1256.

Third, the facts that the OIG officers disclosed to the SSA employees processing Plaintiff's and Mr. Alderete's claims cannot reasonably be called private, because these facts consisted of observations that the officers made of Plaintiff and Mr. Alderete while they were outside their home, and of statements that they voluntarily made to the officers. For all of these reasons, there is no genuine factual dispute regarding whether the OIG fraud investigation or the accusations that led to it meet the required elements of tortious public disclosure of private facts. *Id.*

*(d) Appropriation*

Finally, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C.[31] Invasion of privacy by appropriation "consists of the exploitation of the plaintiff's name or likeness, usually for commercial gain, as in the unauthorized use of the plaintiff's name in an advertising endorsement for a product." *Moore*, 1994-NMCA-104 at ¶ 28, 881 P.2d at 743. Only

---

[31] Where New Mexico law does not address the specific contours of a tort, courts may look to the Restatement for guidance. *See Alvarado*, 493 F.3d at 1217.

when a defendant uses the value of the plaintiff's name or likeness for her own benefit is the right to privacy invaded by appropriation. *Bhandari*, 2011 WL 1336512 at *42.

Here, Plaintiff has wholly failed to allege any facts or submit any evidence tending to show that the SSA employee who reported the family's multiple filings and the employee's suspicions of malingering to the OIG, or the OIG officers who investigated Plaintiff and Mr. Alderete, used the value of Plaintiff's or Mr. Alderete's name or likeness for their own benefit. Thus, as a matter of law, the challenged conduct does not satisfy the elements of tortious appropriation. *Id.*

In sum, Plaintiff has not shown a genuine issue of material fact regarding whether the United States, if a private person, would be liable to her for defamation or invasion of privacy under New Mexico law based on the OIG's fraud investigation or the accusations that led to it. Nor has Plaintiff discussed any other viable private party analogue for the challenged conduct in her Response. As such, neither the investigation nor the accusations that led to it are actionable under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2674; *Gallardo*, 752 F.3d at 870, and Plaintiff's FTCA claims arising out of this conduct will be dismissed for lack of jurisdiction under Rule 12(b)(1). *Brownback*, 592 U.S. at 217-18. Alternatively, Defendant is entitled to summary judgment on these claims under Rule 56. *Celotex Corp.*, 477 U.S. at 323.

    iii. *Employment Discrimination*

As discussed in Section II.B.4, above, Title VII and Section 501 of the Rehabilitation Act provide the exclusive judicial remedies for federal employees' claims of employment discrimination based on race and disability. *Brown*, 425 U.S. at 835; *Ford*, 222 F.3d at 773; *Johnson*, 861 F.2d at 1477; *Padilla*, 836 F. App'x at 677 n.1. Hence, Plaintiff cannot bring claims under the FTCA for race or disability discrimination arising out of her employment at the

SSA, and the Court will grant Defendant judgment on the pleadings on these claims under Rule 12(c). *See Nero v. Rice*, 986 F.2d 1428, *2 (10th Cir. 1993) (unpublished) (affirming dismissal of federal employee's FTCA claims based on allegations of employment discrimination).

### III. CONCLUSION

For the above reasons, Defendant's Motion for Judgment on Plaintiff's Amended Complaint and Memorandum in Support (Doc. 63) is GRANTED, and the claims raised in Plaintiff's [First Amended] Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (Doc. 12) are disposed of, as follows:

1.      Pursuant to Rule 12(b)(1), Plaintiff's claims under 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE for lack of subject-matter jurisdiction;

2.      Pursuant to Rule 12(c), judgment on the pleadings in Defendant's favor is GRANTED on Plaintiff's claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971);

3.      Pursuant to Rule 12(c), judgment on the pleadings in Defendant's favor is GRANTED on Plaintiff's appeals of the Commissioner's final decisions on her and her family's claims for Social Security disability benefits;

4.      Pursuant to Rule 56, summary judgment in Defendant's favor is GRANTED on Plaintiff's employment discrimination claims under Title VII and the Rehabilitation Act;

5.      Pursuant to Rule 12(b)(1), Plaintiff's FTCA claims based on SSA employees' allegedly improper referral of Plaintiff and Mr. Alderete for a fraud investigation are DISMISSED WITH PREJUDICE for lack of subject-matter jurisdiction;

6.      Pursuant to Rule 56, summary judgment in Defendant's favor is GRANTED on Plaintiff's FTCA claims based on SSA employees' failure and refusal to transfer her and her family's claims for disability benefits to another jurisdiction;

7.    Pursuant to Rule 12(b)(1), Plaintiff's FTCA claims based on the OIG's fraud investigation and the accusations that led to it are DISMISSED WITH PREJUDICE for lack of subject-matter jurisdiction. Alternatively, summary judgment in Defendant's favor is GRANTED on these claims pursuant to Rule 56; and,

8.    Pursuant to Rule 12(c), judgment on the pleadings in Defendant's favor is GRANTED on Plaintiff's FTCA claims based on race and disability discrimination arising out of her employment at the SSA.

IT IS SO ORDERED.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent